Good morning. May it please the court. My name is Salvador Colon and I represent Mustafa Musa Jibril. Mr. Jibril is the 36-year-old son of Musa Jibril. He was a former general in the Somalian army. In March of 1991, the Somali government fell. General Jibril, with his wife, six of his children and an elderly relative, then fled in a pickup truck with whatever belongings they could pack. They left behind Mr. Jibril, the petitioner in this case, and his brother. And the father said he would try to make it to Nairobi to meet him, to follow him there. And they did have an aunt in Kenya, so they were going in the direction of Kenya. Before the brother and Mr. Jibril could follow the general, their house was raided. The brother was killed. Mr. Jibril was shot. He was shot in the stomach. Counsel, I think we're quite familiar with the facts of the case. There's a distinction or a discrepancy between Mombasa versus what was the other city that they were expected to go to. There were three. There was Mombasa, Nairobi. Nairobi, right. And how do you explain that discrepancy? Because apparently the immigration judge took that into account and felt that there was a credibility issue. The way that I read the testimony, the reason why I was going through all those facts is because I think that the judge took issue with all of them and or at least found all of them not credible. The way that I... Well, help us with the inconsistencies and the implausibilities. Those are the areas where you may have a possible argument. Yes. The way that I read the Nairobi statement, the father said he was going towards Nairobi if he could make it. But at the beginning of the testimony, Mr. Jibril was not specific as to where the father said he was going and then eventually, after several questions, said he's going to Nairobi if he can make it. And then later on... So your argument is that that's not necessarily inconsistent. That's correct. And it should not affect credibility. Yes. All right. What about the implausibility points? Well, the implausibility, there's no substantial basis for thinking that they are implausible. Mr. Jibril is shot. His brother is killed. Before that, they had seen people outside. They had seen the fire. They were at the door when they were being shot at. So he saw the vehicle that they were in. He pretended to be dead. He's wounded. The troops walk in or whoever. It appears that they're militia. They're dressed in civilian clothes. They kick him... When they walk in, they kick him in the shoulders, apparently, was the testimony, to see if he's dead. He pretends to be dead. They ransack the house. As they're ransacking the house, he takes peeks. He looks. He sees who they are. They don't take everything in the house. They take most of what was in the house. There was some money behind the covers that they didn't take. As they're leaving, he's kicked in the face, and he still manages to pretend that he's dead. And so they leave. Then the other impossibility that the judge found is that the two brothers wouldn't fit in the pickup truck as they're escaping. And I really don't understand. Well, I think one of the problems in the fact pattern you just referred to is that, notwithstanding the fact he was playing dead, he had a very specific description of what actually happened and who the soldiers were, and he could describe what they were wearing and things like that. How do you deal with that? That sounds strange in its face, doesn't it? You could describe some of what they were wearing. For instance, he couldn't describe what they were wearing on their head. To me, that looks like something that you see as you're laying on the ground, as they're ransacking your house. You sneak peeks and see what they're wearing, but you couldn't see their head. So I don't see that as inherently implausible. The other impossibility was he testified that he was bleeding heavily at first, I think. Yes. But yet he lay there all night long without bleeding to death. Judge, if I may digress from something and bring out a point that a friend of mine who is a doctor told me many years ago, and that is that patients, when they're bleeding, tend to exaggerate the extent of their bleeding, and doctors, when a patient is bleeding, tend to understate it. His testimony is he bled tremendously. Obviously, the wound can't have been as severe as he thought it was. However, that doesn't mean he wasn't wounded. That doesn't mean he wasn't bleeding. Well, but if it was severe enough that he had to have surgery, and this was an assault-type weapon that was used and it killed his brother, that sounds pretty severe. Potentially. I agree. Now, I don't know very much about weapons. I've never ñ I don't have much experience, but I think that they're capable of single- Now, one of the advantages the immigration judge has that none of us in this room have is that he was able to examine the demeanor of this witness, of this Petitioner. Don't we have to kind of defer on a close question to the IJ's findings? Well, you know, when the judge talks about demeanor, he says that the respondent showed evasiveness, had a constant tendency ñ I am reading now from the transcript at pages 11 and 12 of the transcript. I'm not certain what pages that is in the record. But he had a ñ he showed much evasiveness. He had a constant tendency to be overly defensive in his answers and to not address the question specifically, but to provide explanatory answers to simple yes-or-no questions. My reading of the transcript indicates that Mr. DeBrill was actually trying to provide full answers. The judge construed certain questions as being yes or no. Mr. DeBrill did not. I am not certain what the evasiveness or the defensiveness that he's speaking of relates to. However, at page 10 of the transcript, at the very beginning of the testimony, one of the first things that Mr. Brill says is that he's scared. So from the beginning of the hearing, he is scared. And I think that colors. I have one more question, and having to do with the withholding of removal. If he were to go back to Somalia, what's the showing on the likelihood of persecution when he gets back? I think the case was based on past persecution. But what about future persecution? I don't think that's a requisite element. You can be a refugee either for past persecution or likelihood of future persecution. Well, I'm asking you, what's the situation when he goes back to Somalia? Is everything's over and everything's peaceful? Or is he still in a category which would expose him to persecution? To be honest, I don't know the exact objective status of Somalia at this time. My knowledge of the region leads me to think that it's not stable enough and that based on his past, he has a reasonable fear for the future. I know that at the time of the hearing, his father and his relatives were still living in a refugee camp. Not in Somalia, somewhere else. That's correct. I believe it was in Kenya still. They were still in Kenya. And to my knowledge, that is still where they are. Okay. Thank you, Counsel. Thank you. We'll hear from the government. May it please the Court. Tina Luthi Miller from the Department of Justice on behalf of the Attorney General. As the Court's questions suggest, this case turns on an adverse credibility determination. To reverse that termination, you have to find that Kishner's testimony compelled the conclusion that he suffered persecution. And for all the reasons offered in the immigration judge's specific, cogent opinion, he hasn't met that standard. Well, there's no question that if he's telling the truth, he suffered persecution. I mean, to be shot at by these thugs and who are taking over the government and the fact that his father is seeking exile, is in exile. I agree, Your Honor, which is why I said that the case turns on the adverse credibility determination. And that determination is supported by substantial evidence. So that's the critical issue here. Well, it's supported by the IJ's conclusion that there are implausibilities, that it is implausible that somebody who's shot in the stomach can survive overnight and have the good fortune of having a Western-style medical hospital run by Western doctors just a few yards away that saves his life. It's that implausibility. It's his evasiveness in testimony. Well, I mean, take that first one. Why is that necessarily implausible? You've heard Mr. Colon's response. Well, Your Honor, it was the story as a whole that was implausible. It was the gravity of the injury that he described. He described an injury serious enough that he lost lots of blood, that he required four to five hours of surgery, that a bullet was removed from him. Yet at the same time, he did not claim to have been unconscious. The immigration judge actually says on page 88 of the record in his decision, well, if he claimed to be unconscious, perhaps I could believe this story. But it was the gravity of the injury coupled with the fact that he was kicked twice when the militia came into his house, and then again in the head as they left, and yet was able to observe all these events. So I don't think it's fair that the immigration judge said to say that the immigration judge said it's the injury itself. It's the injury coupled with his ability to observe, coupled with what he described in the house, coupled with his evasive manner of testifying, the fact that he lied, he admitted that he memorized false facts to enter the country in the first place, which the immigration judge noted. All of these things together led to the immigration judge's adverse credibility determination. Well, what is the conclusion, that this never happened? The judge actually said that the father, if the father had been unconscious, if the father were applying for asylum, he'd clearly make it. Actually, I think that the immigration judge didn't even believe necessarily that he'd shown. There's no evidence in the record beyond the testimony that the father had that position in the military. And the judge said it is a lie. I mean, his testimony, if credible on that point, is enough, isn't it? Yes. And there was no question regarding his testimony relating to his father. Well, the immigration judge, I think, made a credibility determination that was pretty sweeping. He said it is impossible for the court to separate which parts of his story are true, if any. So I think if this Court reverses on credibility, I think it would have to go under the Ventura case. It would have to go back to the board for consideration of these things. The difficulty I'm having with that is the immigration judge has to give specific reasons for each portion of the testimony that's discounted, and there is no reason given specifically for discounting the testimony regarding the father. Well, Your Honor, there is a reason given specifically for discounting the testimony. Many specific parts of the testimony, as we've discussed, but also his credibility generally because of the way in which he testified. What's your best case authority for the proposition that there can be a general credibility finding? It is the Wang case, which is 352 F. 3rd at 1256. Obvious evasiveness may be enough to uphold adverse credibility determination. Global? Is that a global adverse? Well, I'm not certain. The difficulty I'm having with your argument is I'm not sure that there is any case authority to support the proposition that you can make a global adverse credibility determination without pinpointing specifically the problems in each segment of the testimony that's found incredible. Well, Your Honor, again, I think that the most important aspect of credibility here are those specific aspects of credibility. If you disagree that the immigration judge's adverse credibility determination is global, the board, neither the board nor the immigration judge, considered a claim that based on his father's status alone he was entitled to the relief he sought, and so it would have to go back for consideration of that. But that isn't the argument he's made here. The argument he's made here is that the credibility determination should be reversed. And, again, for all the reasons I've given, we don't think that's right. Counsel, I'm troubled by the withholding of removal aspect of this. This individual, there's no issue that he is a member of the Hebraeal tribe. Is there a Y-I-B-I-R, Yibir? I don't believe there is an issue. All right. The State Department country report suggests that it's likely that he'd be killed or seriously injured because of imputed ties to the bar regime, and that it continues today that his particular tribe is a persecuted element in the country. Your Honor, again, I don't think that the immigration judge reached that issue. Well, he had to have concluded that. His issue had been raised, and a final determination would subsume that issue, would it not? I think the immigration judge determined that the credibility situation was such that he said, for example, I have no — I'm not sure I even have enough here to say that this was the reason the family home was attacked. So I think the immigration judge really did raise questions about that. Now, I'm talking about future persecution. Future persecution. The ruling of removal was raised. And denied. Yes, Your Honor, it was. The immigration judge, the — neither here — sorry. Before the immigration judge, Petitioner didn't make a claim separate from past persecution. And in this — to this Court, he hasn't made a claim separate from past persecution. He hasn't said, I'm entitled to relief on the basis of future persecution alone. Not on the asylum claim. Yes, Your Honor. But on the withholding of removal claim, the asylum claim also — the asylum application also includes an application for withholding of removal. That's right, Your Honor. But his argument to this Court is — is only an attack on the credibility determination which goes to the asylum claim and which goes to past persecution. He simply hasn't made that argument here. So how are we to determine then whether or not the denial of the withholding of removal was proper? Well, Your Honor, the immigration judge said, and the board affirmed, the immigration judge said that he felt that the story was simply too vague. He didn't do enough to establish the relationship of this plan to other plans in Somalia. He didn't do enough to establish his father's particular role. Well, what about the country report that Judge O'Scanlan read from? How do you get around that? Well, Your Honor, the Petitioner still has to make some showing that he fits — The report says that people in this plan might be subject to some sorts of abuses. It doesn't say that they definitely will. And the standard for withholding of removal is more likely than not. So he simply just hasn't made the sort of individualized showing that this isn't a category, this isn't a group of people who simply it's enough for them to come in, say I'm a member of this group, prove that, and they're entitled to withholding of removal. There still has to be some sort of individualized showing. But doesn't the I.J. have to make a separate finding for withholding? It's not automatically subsumed in whatever findings are made for asylum. Well, the showing you have to make for withholding of removal is higher than the showing of asylum. For asylum, you have to show a reasonable possibility that you'd be subject, that you had been subject, that you would be subject to future persecution. For withholding of removal, you have to show that it's a clear probability. And so by finding that he wasn't, hadn't shown that it was the standard for asylum as to future persecution, he also made that finding as to withholding. I'm not sure that's true, that there was a specific finding in terms of the evidence, because the country report wasn't discussed at all. The immigration judge did discuss the conditions in the country. In terms of the withholding of removal denial? Not separately, but I think that this Court's precedents make clear that a denial of asylum is sufficient in these sorts of circumstances because the showing you have to make for withholding of removal is higher. I thought our precedents said that you have to make the findings separately for withholding. You can't make a global finding and have it deemed adequate for both asylum and withholding. Well, the immigration judge, I don't think, made – I think the immigration judge made a finding, a fact, as to credibility. The end of his opinion says that his final conclusion is that he hadn't shown past persecution, he hadn't separately shown future persecution because his presentation of that evidence was so vague, and that on the basis of that, he was denying asylum and withholding of removal. Thank you, counsel. The case just argued will be submitted for decision, and we will proceed to hear argument in two cases together, M&A Gabay and M&A Gabay versus the Community Development Agency of the City of Los Angeles. Counsel, you may proceed.
judges: O'scannlain, Rawlinson, Whaley